Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL O'NEILL, *on behalf of himself and all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>RADIUS GLOBAL SOLUTIONS, LLC,<br><br>Defendant. | Civil Action No.: 21-16567 (ES) (JSA)<br><br>OPINION |

SALAS, DISTRICT JUDGE

Plaintiff Michael O'Neill filed this action against Radius Global Solutions, LLC ("Radius") on behalf of himself and all others similarly situated for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. (D.E. No. 7 ("Amended Complaint" or "Am. Compl.")). Before the Court is Radius's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (D.E. No. 12). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). As set forth below, Radius's motion is **GRANTED in-part** and **DENIED in-part**.

## I.      BACKGROUND

As alleged in the Amended Complaint, sometime before August 3, 2021, Plaintiff incurred a "debt," as defined under the FDCPA, to Emergency Physician Associates of North Jersey ("EPANJ"). (Am. Compl. ¶¶ 5 & 18). On August 3, 2021, Plaintiff received a letter from Radius regarding the debt owed to EPANJ (the "August 3 Letter" or the "Letter"). (*Id*. ¶ 26 (citing Exhibit

A to Am. Compl. ("Ex. A")) at 19–20).[1]  The letter begins by stating "Accounts in [Radius's] office" for creditor EPANJ, specifically:

| Debt Description: | Account #: | Balance Due: |
|---|---|---|
| SERVICE DATE 12/24/2012 | ***************0681 | $1,230.00 |

**NOTICE:  SEE REVERSE SIDE FOR ADDITIONAL ACCOUNTS LISTED**

(Ex. A at 19).  Immediately below, the letter states:

> The law limits how long you can be sued on a debt.  Because of the age of your debt, you cannot be sued for it.  In many circumstances, you can renew the debt and start the time period for the filing of a lawsuit against you if you take specific actions such as making certain payment on the debt or making a written promise to pay. You should determine the effect of any actions you take with respect to this debt.

(*Id.*).

Next, the Letter provided Plaintiff two options to settle his debt, which did not require immediate payment in full:

> Option 1: Split the total balance into 3 installments over 3 consecutive months to pay in full.  To fulfill this option make the following payments: month 1 $829.33; month 2 $829.33; month 3 $829.34.  Your first payment is due in our office within 45 days from the date of this letter.  Remaining payments are due every 30 days thereafter until paid in full.  Should you fail to complete the arrangement proposed under this option any payments made will be applied to the balance due shown above.

---

[1]      All pin citations to Exhibit A are to the automatically generated pagination from the Court's CM/ECF system. In addition, the Amended Complaint twice refers to a letter dated nearly one year prior to the letter attached as Exhibit A.  (*See* Am. Compl. ¶¶ 58 & 64 (mentioning an August 13, 2020 letter)).  Because Plaintiff does not otherwise distinguish between the two different letters in the Amended Complaint or his opposition brief, the Court considers paragraphs 58 and 64 to refer to the letter dated August 3, 2021.

> Option 2: Reduced Payment Option. Pay a onetime payment of $995.20 to resolve the above Account(s) balance for less than the total balance. Provided the payment made is not reversed or otherwise returned as unpaid, no further attempts will be made to collect the remaining balance. Your payment is due in our office within 45 days from the date of this letter.

(*Id.*).  The letter also contains language that notifies Plaintiff of his legal rights, as mandated by 15 U.S.C. § 1692g:

> The preceding information does not affect your rights set forth below:
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid.  If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.  If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.   [hereafter, "Validation Notice"].

(*Id.*).  The Letter contains a payment slip after the Validation Notice.  (*Id.*).  The payment slip reflects a "**Balance Due**" of $2,488.00.  (*Id.*).  On the reverse side, the letter lists additional "Account(s) in [Radius's] office," specifically:

| Debt Description: | Account #: | Balance Due: |
|---|---|---|
| SERVICE DATE 02/06/2013 | ***************0681 | $106.00 |
| SERVICE DATE 02/05/2013 | ***************0681 | $1,152.00 |
| | **Total Balance:** | $2,488.00 |

(*Id.* at 20).

On September 7, 2021, Plaintiff initiated this action alleging that Radius engaged in "false, deceptive, or misleading representations or means" in violation of the FDCPA, 15 U.S.C. §§ 1692g and 1692e (Count I).  (D.E. No. 1 ¶ 61; *see also* Am. Compl. ¶¶ 71–97).  Radius moved to dismiss, Plaintiff filed the Amended Complaint, and Radius answered.  (D.E. No. 5; Am. Compl.; D.E. No. 10).  On January 21, 2022, Radius moved for judgment on the pleadings pursuant to Rule 12(c). (D.E. No. 12; D.E. No. 12-1 ("Mov. Br.")).  Plaintiff opposed and Radius replied.  (D.E. No. 14 ("Opp."); D.E. No. 22 ("Reply")).  Thereafter, the parties requested leave to file supplemental submissions and notices regarding the same.  (D.E. Nos. 23–24, 28–30 & 32).  In particular, Radius submitted a notice of supplemental authority highlighting a recent decision by the Honorable Jeffrey Schmehl, United States District Judge in the Eastern District of Pennsylvania, to which Radius was also a named defendant.  (D.E. No. 28 (citing *Bernard v. Radius Global Solutions, LLC*, No. 21-3605, 2022 WL 1557270 (E.D. Pa. May 17, 2022))).

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed.  When adjudicating such a motion, a Court applies the same standard as that under Rule 12(b)(6).  *See Wolfington v. Reconstructive Orthopaedic Assocs. II PC*, 935 F.3d 187, 195 (3d Cir. 2019); *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991). That is, the Court must accept "all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff."  *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018).   And the Court must "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements."  *Id.* at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)).  The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

face," and a claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

While the Court generally "may not consider matters extraneous to the pleadings" when deciding a Rule 12(b)(6), or as here, a Rule 12(c), motion, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), an exception to this general rule provides that the Court "may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (first citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002); and then quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004)).

## III.   DISCUSSION

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  The FDCPA "provides consumers with a private cause of action against debt collectors who fail to comply with the Act." *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006).  Because the FDCPA is a remedial statute, courts "construe its language broadly so as to effect its purposes."  *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 367 (3d Cir. 2011) (citing *Brown*, 464 F.3d at 453).

"To prevail on an FDCPA claim, a plaintiff must prove that (1) []he is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 417 (3d Cir. 2015) (quoting *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014)).

Here, the parties' dispute centers on the fourth element—whether Radius's collection efforts violated Sections 1692g and 1692e of the FDCPA.  Specifically, Plaintiff sets forth three bases to support a claim for Radius's alleged FDCPA violations.  First, Plaintiff submits that the August 3 Letter violates Sections 1692g(a)(4), (5), 1692g(b), and 1692e because it contains misleading payment options that overshadow and contradict the Validation Notice, leaving Plaintiff unsure of how to address or dispute his debt.  (Am. Compl. ¶¶ 53–64, 86–88, 90–91 & 95; Opp. at 3–4 & 16–21).  Second, Plaintiff maintains that the Letter violates Sections 1692e and 1692e(10) because it misrepresents the law regarding the revival of the statute of limitations on time-barred debt.  (Am. Compl. ¶¶ 46–47 & 84–85; Opp. at 3 & 6–13).  Third, Plaintiff argues that the Letter violates Sections 1692e(2)(A) and 1692g(a)(1) because it includes deceptive and misleading information about the character and amount of his debt (Opp. at 3 & 13–16); specifically, it contains conflicting balances due.  (*See id.*; *see also* Am. Compl. ¶¶ 32–33, 37–44, 83 & 89).  Radius contends that Plaintiff fails to plausibly plead an FDCPA claim under any provision.  (*See generally* Mov. Br.).  The Court addresses each argument in turn.

### A.    Radius's Offers to Resolve Plaintiff's Debt Do Not Overshadow or Contradict the Validation Notice Under 15 U.S.C. § 1692g

The "debt validation provisions of [S]ection 1692g were included by Congress to guarantee that consumers would receive adequate notice of their rights under the law." *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354 (3d Cir. 2000) (citing *Miller v. Payco-General Am. Credit, Inc.*, 943 F.2d

482, 484 (4th Cir. 1991)).  Pursuant to Section 1692g, a debt collector must provide the following

information in writing to the debtor "[w]ithin five days after the initial communication with a

consumer . . . unless the following information is contained in the initial communication or the

consumer has paid the debt":

> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).  "Paragraphs 3 through 5 of [S]ection 1692g(a) contain the validation

notice—the statements that inform the consumer how to obtain verification of the debt and that he

has thirty days in which to do so."  *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d

142, 147 (3d Cir. 2013) (quoting *Wilson*, 225 F.3d at 353–54).  After a consumer disputes a debt

in writing within the thirty-day period or seeks clarification as to the identity of the original

creditor, Section 1692g(b) provides that "the debt collector shall cease collection of the debt, or

any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a

judgment, or the name and address of the original creditor, and a copy of such verification or

judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector." § 1692g(b).

A validation notice must be "interpreted from the perspective of the 'least sophisticated debtor'"[2] and must not be "overshadowed or contradicted by accompanying messages from the debt collector." *Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir. 1991) (noting that "statutory notice must not only explicate a debtor's rights; it must do so effectively"), *overruled on other grounds by Riccio v. Sentry Credit, Inc.*, 954 F.3d 582 (3d Cir. 2020); *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 471 (3d Cir. 2021). "The basic purpose of the least-sophisticated [debtor] standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Lesher v. Law Offices Of Mitchell N. Kay, PC*, 650 F.3d 993, 997 (3d Cir. 2011) (quoting *Brown*, 464 F.3d at 453). "Although the least sophisticated debtor standard is lower than the standard of a reasonable debtor, it preserves a quotient of reasonableness and presumes a basic level of understanding and willingness to read with care." *Jensen*, 791 F.3d at 418 (internal citations and quotations omitted). It does not, however, subscribe to "bizarre or idiosyncratic interpretations of collection notices." *Hopkins*, 994 F.3d at 122 (quoting *Wilson*, 225 F.3d at 354–55).

Under the least sophisticated debtor standard, a debt collector violates the FDCPA when its communication misleads the recipient into thinking that he or she has a legal obligation to pay a time-barred debt, *see Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 428 (3d Cir. 2018), or "when it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Caprio*, 709 F.3d at 149 (quoting *Wilson*, 225 F.3d at 354). Furthermore, the least sophisticated debtor standard is objective, "meaning that the specific plaintiff need not prove that *she* was actually confused or misled, only that the objective least sophisticated debtor would be." *Jensen*,

---

[2]    While courts sometimes refer to this standard as the "least sophisticated consumer" or the "unsophisticated debtor," the same underlying principles apply. *See Hopkins v. Collecto, Inc.*, 994 F.3d 117, 121 (3d Cir. 2021).

791 F.3d at 419.  Whether a collection letter would mislead the least sophisticated debtor or contradict or overshadow the validation notice are questions of law that may be resolved in a Rule 12(b)(6) motion.  *Smith v. Lyons, Doughty & Veldhuius, P.C.*, No. 07-5139, 2008 WL 2885887, at *3 (D.N.J. July 23, 2008); *Wilson*, 225 F.3d at 353 n.2.

If a debt collector complies with the validation notice requirements pursuant to Section 1692g, "[t]here is nothing improper about making a settlement offer."  *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 299 (3d Cir. 2008) (quoting *Evory v. RJM Acquisitions Funding LLC*, 505 F.3d 769, 775 (7th Cir. 2007)).  "Overshadowing" occurs when the format of a letter does not allow the consumer to see the validation notice, leaving him "in the dark about his dispute and/or validation rights."  *Bernard*, 2022 WL 1557270, at *3 (citing *Jewsevskyj v. Fin. Recovery Servs., Inc.*, 704 F. App'x 145, 148 (3d Cir. 2017)).  In this regard, courts evaluate collection letters for both "form" and "substance."  For example, courts have found overshadowing when the validation notice appears in fine print, in a different font, or when it is located on the back of the letter without any notification on the front that alerts the consumer to the disclosure.  *Id.* (first citing *Wilson*, 225 F.3d at 356; and then citing *Hayes v. Collecto, Inc.*, No. 20-0411, 2020 WL 4587985, *5 (W.D. Pa. July 23, 2020), *report and recommendation adopted*, 2020 WL 4584226 (W.D. Pa., Aug. 10, 2020)).

An "inconsistency" occurs when a debt collector insinuates that payment is due *before* the dispute period expires, effectively resulting in an illusory dispute period and validation notice. *Bernard*, 2022 WL 1557270, at *4 (first citing *Graziano*, 950 F.2d at 111; and then citing *Larkin v. Turner*, No. 18-9357, 2019 WL 6975059, at *4 (D.N.J. Dec. 18, 2019)); *Wilson*, 225 F.2d at 359–60 (recognizing that courts of appeals have found Section 1692g violations when "a written communication contain[s] language which demanded payment within a time period *less than* the

statutory thirty-day period and the demand was communicated in a format that emphasized the duty to make payment and obscured the fact that the debtor had thirty days to dispute the debt") (emphasis added).

In *Wilson*, the Third Circuit characterized plaintiff's letter as presenting two options, neither of which overshadowed or contradicted the other: "(1) an opportunity to pay the debt immediately and avoid further action, or (2) notify [defendant] within thirty days after receiving the collection letter that he disputes the validity of the debt." 225 F.2d at 356. Following *Wilson*, courts in our District recognize that a consumer's option to either dispute the debt or make a payment is consistent with Section 1692g, so long as any deadline for payment does not fall within the thirty-day dispute period. *See, e.g.*, *Bernard*, 2022 WL 1557270, at *4; *Rhee v. Client Servs., Inc.*, No. 19-12253, 2020 WL 4188161, at *6 (D.N.J. July 21, 2020) ("[T]he fact that the Debt Collection Letter provided [p]laintiff with forty days to accept the resolution offer does not overshadow the thirty-day requirement in the validation notice."); *Panto v. Prof'l Bureau of Collections*, No. 10-4340, 2011 WL 843899, at *4 (D.N.J. Mar. 7, 2011) (same).

Here, Plaintiff argues that Radius "overshadowed" and "contradicted" his right to dispute the debt within thirty days by offering payment options that expired within forty-five days of him receiving the August 3 Letter. (Opp. at 18–19). Accordingly, he asserts that the Validation Notice leaves the least sophisticated consumer uncertain of his or her rights. (*Id.* at 19). For example, Plaintiff maintains that it is unclear whether his acceptance of a payment option would dissolve his right to dispute the debt within thirty days. (*Id.* at 19–20). Conversely, if he disputed the debt, but Radius did not verify the debt before the forty-five-day deadline, Plaintiff maintains it is unclear whether his payment options would be tolled pending receipt of Radius's verification. (*Id.* at 19). Although Plaintiff could select a payment option *and* dispute the debt, he argues that this

10

scenario results in uncertainty if Radius could not verify the debt and/or obtain a copy of the judgment—leaving his potentially improper payment in limbo.  (*Id.* at 19–20).

In sum, Radius argues that the Letter complies with Section 1692g in both form and substance.  (Mov. Br. at 14–19).  Moreover, even if Radius contradicted Plaintiff's rights as stated in the Validation Notice, it maintains that the presence of a reconciling statement immunizes it from liability.  (*Id.* at 18–19; Reply at 13 n.3).  For the reasons stated below, the Court agrees with Radius.

The Validation Notice is not overshadowed, nor is it contradicted by inconsistent statements in the August 3 Letter.  First, the Validation Notice is printed on the front page, in the same font and size as the remainder of the letter.  (*See* Ex. A at 19).  It also contains all language required under Section 1692g(a)(3)–(5).  Thus, to the extent disputed, the Court finds no "overshadowing" in the Letter's form.  *See Bernard*, 2022 WL 1557270, at *4 (concluding the same).

Second, Plaintiff clearly and unambiguously had the option to request validation and dispute the debt for thirty days—or fifteen days *before* the deadline to invoke Radius's payment options.[3]  Akin to *Bernard*, the Letter does not demand payment or threaten legal recourse.  *See* 2022 WL 1557270 at *4.  Because the Letter does not suggest that Plaintiff had to pay his debt prior to the thirty-day dispute period and relinquish his validation rights, his claim pursuant to Section 1692g necessarily fails.  *See, e.g.*, *Cohen v. Mercantile Adjustment Bureau, LLC*, No. 21-16977, 2022 WL 1567798, at *4 (D.N.J. May 18, 2022); *Pistone v. Halsted Fin. Servs., LLC*, No. 21-4167, 2022 WL 525934, at *5 (D.N.J. Feb. 22, 2022); *Rhee*, 2020 WL 4188161, at *6.

---

[3]     Even accepting Plaintiff's argument that he would have been required to mail his payment a few days before the forty-five-day deadline to ensure Radius's timely receipt (Opp. at 18–19), he does *not* allege, much less argue, that his payment necessarily *must have been* mailed on or before the thirty-day dispute period.  (*See id.*; *see also* Am. Compl.).

In addition, the Court finds that Plaintiff's reliance on *Norman v. Allied Interstate, LLC*, 310 F. Supp. 3d 509 (E.D. Pa. 2018) is not persuasive for the same reasons as *Bernard*, a case which involved substantially the same arguments regarding an identical validation notice. (Opp. at 20–21). Norman received a debt collection letter with a statement regarding her thirty-day dispute and validation period pursuant to Section 1692g. *Norman*, 310 F. Supp. 3d at 512. In addition, the letter provided the following:

> To make a payment, please telephone us at 866–466–3142 or mail your payment . . . . [Y]our account will be debited on the day we receive your payment. Your check will not be returned.

*Id.* Norman argued Allied's representation that her account would be debited immediately, and that her check would not be returned, together with "'anticipatory language welcoming payment'—in the absence of any clarifying language—overshadowed the validation notice" leaving an unsophisticated consumer uncertain of her rights. *Id.* at 519. Akin to Plaintiff in the instant action, Norman questioned what would happen in hypothetical scenarios: "If she sent a payment, would she be giving up her rights to dispute or verify the debt? If she disputed the debt, and then sent payment (or did both simultaneously), and the debt were found invalid, would Allied return her payment?" *See id.* at 519–20. Importantly, the *Norman* court acknowledged that "Allied's request for payment did not 'standing alone' violate the Act." *Id.* at 520 (quoting *Wilson*, 225 F.3d at 357). Rather, in concluding that Norman adequately alleged a claim pursuant to Section 1692g, the court reasoned that "it was Allied's request for payment and warning that checks would be immediately deposited and not returned, without explaining that its demand did not override the consumer's rights under section 1692g that rendered the validation notice ineffective." *Id.* (internal quotations omitted). Thus, the court found that without a reconciling

statement, the least sophisticated consumer would be uncertain as to "how Allied's demands 'fit[] together' with her dispute and validation rights." *Id.* (citing *Caprio*, 709 F.3d at 152).

*Norman* is inapposite because this matter, like *Bernard*, does not involve a debt collection letter that contains a representation as to the immediate debit of Plaintiff's account or immediate deposit of his checks. *See Bernard*, 2022 WL 1557270, at *5. Rather, the August 3 Letter is similar to the letter examined in *Wilson*, which presented two options—pay the debt or dispute the debt within thirty days—neither being emphasized over the other or impressing upon plaintiff that payment before the thirty-day dispute period would be immediately deposited and not returned. *See id.*; *see also Wilson*, 225 F.3d at 356. Notwithstanding Radius's silence as to the procedure following a potential dispute, the Letter made clear that Plaintiff "could exercise his right to dispute the debt as an initial matter." *See Bernard*, 2022 WL 1557270, at *5. Accordingly, the Court concludes that the August 3 Letter does not overshadow or contradict the Validation Notice in violation of 1692g. Thus, Plaintiff's FDCPA claim premised on Sections 1692g(a)(4), (5), and 1692g(b) is dismissed.[4]

## B.    Radius's Time-Bar Disclosure is Not False, Deceptive, or Misleading Under Section 1692e

Next, Plaintiff alleges that Radius made false, deceptive, and misleading statements on the law governing time-barred debt in violation of Sections 1692e and 1692e(10). (Am. Compl. ¶¶ 46–47 & 84–85; Opp. at 6–13). Section 1692e provides that "[a] debt collector may not use any

---

[4]    The Court need not address Radius's argument that its alleged inclusion of a "reconciling statement" provides an alternative basis for dismissal of Plaintiff's Section 1692g claim. (Mov. Br. at 18–19 (citing *Wilson*, 225 F.3d at 356); Reply at 13 n.3). Relevant here, *Wilson* alluded to the Seventh Circuit's decision in *Bartlett v. Heibl*, 128 F.3d 497 (7th Cir. 1997), which merely advises debt collectors to include a "reconciling statement" that explains how two contradictory rights in a debt collection letter fit together. *Wilson*, 225 F.3d at 355 n.4; *see Bartlett*, 128 F.3d at 501–02. The Third Circuit, however, did not affirmatively adopt *Bartlett*'s advisement because the debt collection letter in *Wilson* did not contain a contradiction—obviating the need to decide whether a reconciling statement could cure a contradiction to comply with Section 1692g. *See Panto*, 2011 WL 843899, at *3 n.1.

false, deceptive, or misleading representation or means in connection with the collection of any debt," which includes "[t]he false representation of . . . the character, amount, or legal status of any debt[.]"  § 1692e(2)(A).  Section 1692e(10) imposes liability for "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  § 1692e(10).  "A debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate."  *Dotson v. Nationwide Credit, Inc.*, 828 F. App'x 150, 153 (3d Cir. 2020) (quoting *Brown*, 464 F.3d at 455).[5]

Here, Plaintiff focuses on the first paragraph of the August 3 Letter, which states:

> The law limits how long you can be sued on a debt.  Because of the age of your debt, you cannot be sued for it.  ***In many circumstances***, you can renew the debt and start the time period for the filing of a lawsuit against you if you take specific actions ***such as making certain payment on the debt or making a written promise to pay***. You should determine the effect of any actions you take with respect to this debt.

(Ex. A at 19 (emphasis added)).  First, Plaintiff argues that Radius's statement about "***making certain payment on the debt***" is deceptive because partial payment alone is insufficient to restart the statute of limitations under New Jersey law; rather, partial payment must be coupled with an act which signifies the debtor's intention to pay the debt in full.  (Opp. at 8–9).  Second, Plaintiff asserts that Radius's statement about "***making a written promise to pay***" is deceptive because under New Jersey Law, the writing must convey a promise to pay the entire debt.  (*Id.* at 9–10).

Radius primarily argues that Plaintiff's interpretation of the time-bar disclosure is unreasonable and that its statements are not "materially deceptive."  (Mov. Br. at 19–24; Reply at

---

[5]     Furthermore, to the extent Plaintiff contends that the forty-five-day deadline to make a payment is deceptive under Section 1692e (*see* Opp. at 3–4), this argument fails because the deadline is not susceptible to two or more meanings.  *See Bernard*, 2022 WL 1557270, at *5–6 (noting that "[p]laintiff's theory that the deadline to accept the settlement offers might be extended if he disputed the debt is pure speculation and exactly the type of unreasonable interpretation that does not give rise to liability under [S]ection 1692e").

15–21).[6]  First, Radius contends that its disclosure is generic (*i.e.*, not specific to New Jersey law) because it alerts the reader that "in many circumstances" actions "such as making certain payment" or "a written promise to pay" can restart the statute of limitations on otherwise time-barred debt. (Mov. Br. at 21–23; Reply at 15–19).  Second, Radius believes that even if its time-bar disclosure is inaccurate, it is not materially deceptive because the statement "would not coerce or trick a consumer into making a payment" on time-barred debt to his or her detriment.  (Reply at 19–21 (arguing that "it is potentially 'deceptive' *not* to inform a consumer that a debt is time-barred and that taking action on the debt might restart the [statute of limitations]"); *see* Mov. Br. at 23–24). The Court agrees with Radius.

The parties have not provided, nor has the Court located, a case interpreting the same or similar time-bar disclosure in the Third Circuit.  The Court, however, is persuaded by reasoning applied in *Domke v. MRS BPO, LLC*, No. 19-1442, 2020 WL 513807 (M.D. Fla. Jan. 31, 2020), a decision which interpreted an identical argument concerning the same time-bar disclosure.  There, the Honorable Charlene Edwards Honeywell examined Florida law, which, similar to New Jersey, provides that the statute of limitations on otherwise time-barred debt may be tolled upon partial payment and a written promise to pay the debt.  *Id.* at *4 (first citing *Baez v. LTD Fin. Servs., L.P.*, 757 F. App'x 842, 844 (11th Cir. 2018); and then citing *Madinya v. Portfolio Recovery Assocs., LLC*, No. 18-61138, 2018 WL 6590829, at *2 (S.D. Fla. Dec. 14, 2018)).  Much like Plaintiff's argument in the instant case, Judge Honeywell acknowledged that a debt collector's assertion that partial payment on the debt will restart the statute of limitations would be inaccurate under Florida law.  *Id.*

---

[6]      The parties appear to agree that under New Jersey law the applicable limitations period is six years, which may be tolled by partial payment together with a written promise to pay the debt in its entirety.  (Opp. at 8–10; Reply at 19); *see Genova v. Total Card, Inc.*, 193 F. Supp. 3d 360, 369 (D.N.J. 2016) (stating the same).

But, as in *Domke*, that is ***not*** what Plaintiff's August 3 Letter states. *See id.* Rather, the letter in *Domke* and the Letter before the Court contain time-bar disclosures that are broad and generic; they are not specific to any one state's law. For example, "[i]n ***many*** circumstances" does not mean in ***all*** circumstances. (*See* Ex. A at 19 (emphasis added)). Similarly, taking "specific actions ***such as*** making certain payment . . . or making a written promise to pay" does not encompass ***all*** possible actions. (*See id.* (emphasis added)). Akin to *Domke*, Radius "correctly communicated that [it] could not sue Plaintiff to recover the debt because of the amount of time that had passed." *See* 2020 WL 513807 at *4. Thus, the Court concludes that Radius's "statements did no more than provide general information cautioning Plaintiff" that his actions "could change the legal status of the debt."[7] *See id.*; *see also Davis v. Portfolio Recovery Associates, LLC*, No. 20-1063, 2021 WL 4133733, at *12 (M.D. Fla. Sept. 10, 2021) ("PRA provided Davis general information cautioning him that certain of his actions could change the legal status of his debt, without making any affirmative legal representations"); *Bell v. Cascade Capital LLC*, No. 19-1559, 2020 WL 1042423, at *2 (W.D. La. Mar. 3, 2020) ("[Defendant's] letter contains no Louisiana-specific provisions, nor does it indicate that partial payment will revive a claim under every state law.").

Moreover, even assuming the time-bar disclosure misstates New Jersey law, the Court agrees with Radius that the disclosure is not material. "A statement is material if it is capable of influencing the decision of the least sophisticated debtor." *Simon v. FIA Card Servs. NA*, 639 F. App'x 885, 888 (3d Cir. 2016) (internal quotations omitted). Indeed, the generic language that

---

[7]     As Radius highlights, the cases Plaintiff cites in support of his position are distinguishable because they concern different language entirely outside the realm of the applicable statute of limitations. *See Schultz v. Midland Credit Mgmt.*, 905 F.3d 159, 162–63 (3d Cir. 2018) (challenging IRS debt reporting language); *Broderick v. Viking Client Servs.*, Inc., No. 17-1827, 2017 WL 4269962, at *4 (D.N.J. Sept. 28, 2017) (same); *Griffin v. Andrea Visgilio-McGrath, LLC*, No. 17-0006, 2017 WL 3037387, at *8 (D.N.J. July 18, 2017) (challenging language regarding the appearance of a judgment on plaintiff's credit report); (*see* Mov. Br. at 20–21; Reply at 17–20).

16

"specific actions such as making certain payment" "can renew the debt and restart the time period for the filing of a lawsuit against you," followed by the statement "[y]ou should determine the effect of any actions you take with respect to this debt," (Ex. A at 19), "could not possibly have affected the least sophisticated debtor's ability to make intelligent decisions." *See Jensen*, 791 F.3d at 422 (internal quotations omitted); *see also Davis*, 2021 WL 4133733, at *12 (finding a substantially similar time-bar disclosure immaterial). If anything, Radius's time-bar disclosure would deter the least sophisticated debtor from making partial payment until he or she determined the effect of such action. (*See* Mov. Br. at 24; Reply at 19–20). Accordingly, Plaintiff's FDCPA claim for alleged violations of Section 1692e and 1692e(10) are dismissed.[8]

## C.   Plaintiff Adequately Alleges that the August 3 Letter is Misleading as to the Total Balance Due Under 15 U.S.C. §§ 1692g(a)(1) and 1692e

Finally, Plaintiff alleges that Radius's August 3 Letter violates Sections 1692g(a)(1) and 1692e(2)(A) by misrepresenting the character and amount of the alleged debt. (Am. Compl. ¶¶ 32–33, 37–44, 83 & 89; Opp. at 13–16). To contextualize the parties' arguments, the Court first reiterates the Letter's contents and format with respect to the balance due.

The Letter is two pages, front and back. (Ex. A at 19–20). On the front page of the letter, immediately below the address header, EPANJ is listed as Plaintiff's creditor. (*Id.* at 19). There is one service date and account number associated under EPANJ, followed by a "**Balance Due**" of $1,230.00. (*Id.*). Immediately beneath this information is the following notice in all capital, bolded lettering: "**NOTICE: SEE REVERSE SIDE FOR ADDITIONAL ACCOUNTS LISTED**" (hereafter, the "Notice"). (*Id.*). This first portion of the Letter is depicted below:

---

[8]     Indeed, it is plausible that Radius included a generic time-bar disclosure given that debtors appear to argue precisely the opposite of what Plaintiff does here—that an FDCPA violation occurs when debt collectors *fail* to inform debtors that partial payment may revive the statute of limitations on time-barred debt. *See, e.g.*, *Blaha v. First Nat'l Collection Bureau, Inc.*, No. 16-2791, 2016 WL 11733536, at *2 (D.N.J. Nov. 10, 2016); (*see also* Reply at 20).



(*Id.*).  Beneath the Notice is Radius's time-bar disclosure, followed by two payment options offered

to Plaintiff.  (*Id.*).  The time-bar disclosure and payment options appear as follows:



(*Id.*).  On the bottom of the front page, after the Validation Notice, the Letter contains a payment

slip which states, among other things, "**Balance Due**:  $2,488.00":

(*Id.*).

The reverse side of the Letter lists two additional service dates and account numbers.  (*Id.*

at 20).  Each service date contains a different "**Balance Due**"—$106.00 and $1,152.00,

respectively.  (*Id.*).  Immediately thereafter, the Letter states "**Total Balance:** $2,488.00."  (*Id.*).

The entire back portion of the letter is depicted below:



(*Id.*).

Plaintiff maintains that the Letter interchangeably refers to the entirety of his debt as both

the "Balance Due" and "Total Balance," without explanation.  (Opp. at 14–15).  Second, he asserts

that the "Total Balance" of $2,488.00 listed on the back of the Letter is deceiving because it

incorporates the "Balance Due" on the front of the Letter.  (*Id.* at 15).  Stated differently, $106.00

plus $1,152.00 does not equal $2,488.00.  (*See id.*).  Finally, Plaintiff argues that payment "Option

1," which provides for installment payments of $829.33, $829.33, and $829.34, is deceptive

because it further states that should Plaintiff fail to complete the schedule, Radius will apply "any

payments made . . . to the ***balance due shown above***."  (*Id.* at 14 (quoting Ex. A at 19)).  And the

"balance due shown above" on the front page is $1,230.00.  (*Id.*).

Meanwhile, Radius argues that it "clearly disclosed the total amount of the debt" due.

(Mov. Br. at 10–11).  It maintains that the Notice adequately informs even the least sophisticated

debtor that the "Balance Due" and "Total Balance Due" of $2,488.00, as depicted on the payment

slip and on the back of the Letter, is comprised of three accounts listed: $1,230.00 + $106.00 +

$1,152.00 = $2,488.00.  (*Id.* at 11).  Thus, when read as a whole and in a reasonable manner,

Radius asserts that the total amount of Plaintiff's debt is $2,488.00.  (Reply at 6).  As explained

further below, the Court agrees with Plaintiff.

19

Relevant here, Section 1692g(a)(1) states that a debt collector shall, either five days after an initial communication with a consumer or in its initial communication, "send the consumer a written notice containing . . . the amount of the debt." And, as noted above, Section 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt," which includes "[t]he false representation of . . . the character, amount, or legal status of any debt." § 1692e(2)(A). As Radius suggests, the Third Circuit has held that even the least sophisticated debtor is "bound to read collection notices in their entirety." *Campuzano-Burgos*, 550 F.3d at 298–99 (collecting cases); *see Dibattista v. Buckalew, Frizell & Crevina, LLP*, 574 F. App'x 107, 111 (3d Cir. 2014) (finding that "it is not unreasonable to expect even the least sophisticated debtor to be able to perform the simple addition of two sums," such as the debt owed plus attorneys' fees associated with the preparation of a debt collection letter).

Although the least sophisticated debtor may be required to read the Notice and the reverse side of the Letter to have a complete understanding of the debt, the Court is persuaded by Plaintiff's argument regarding the language in "Option 1," which provided an opportunity to pay the debt in three installments. (Opp. at 14). If Plaintiff made some, but not all installment payments, the Letter plainly states that said payments "will be applied to the balance due ***shown above***." (Ex. A at 19). Critically, the only balance depicted above "Option 1" is "$1,230.00" associated with the sole account listed on page one. (*Id.*). "[T]he balance due shown above" is different than the "Balance Due" shown below on the payment slip and the "Total Balance" on Letter's reverse side. (*See id.* at 19–20). Furthermore, if Plaintiff made two of the three installments, his payments would exceed "the balance due shown above." Specifically, he would have paid $1,658.66—or $428.66 more than "the balance due shown above" of $1,230.00. Although neither party provided

a case-on-point,[9] it is plausible that the least sophisticated debtor—even one who flipped the page—could be misled as to the character and amount of the alleged debt based on the language contained in "Option 1." Accordingly, Plaintiff adequately alleges an FDCPA claim for alleged violations of Sections 1692g(a)(1) and 1692e(2)(A).

### D.    Amendment

The Court need not permit Plaintiff a second opportunity to amend if it would be futile. *See, e.g.*, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002). Here, an amendment to Plaintiff's dismissed claims, (*see supra*, Sections III.A–B), would be futile because they are based entirely on the August 3 Letter that is properly before the Court. Indeed, there are no additional facts that would cure the deficiencies noted herein. Accordingly, Plaintiff's FDCPA claim premised on alleged violations of Sections 1692g(a)(1) and 1692e(2)(A) shall proceed; all other purported violations are dismissed with prejudice as futile. *See Akegnan v. Trinity Fin. Servs., LLC*, 22-15761, 2021 WL 5984896, at *7 (D.N.J. Dec. 6, 2021) (noting that courts in the Third Circuit "have dismissed FDCPA claims with prejudice where amendment would be futile") (collecting cases).

## IV.    CONCLUSION

For the reasons stated above, the Court **GRANTS in-part** and **DENIES in-part** Radius's motion for judgment on the pleadings. An appropriate Order follows.


Dated: September 27, 2022                                    */s/Esther Salas*
                                                            Esther Salas, U.S.D.J.

---

[9]        Unlike *Grubb v. Green Tree Servicing, LLC*, this case does *not* involve multiple debt collection letters that fail to explain the calculation of debt. *See* No. 13-7421, 2014 WL 3696126, at *8–9 (D.N.J. July 24, 2014).